Ronald A. WEISFELD, Slawomir Leszinski, Arturo Singer, and Blankenship # 1 F.L.P., Appellants,

v.

TEXAS LAND FINANCE COMPANY II, Appellee.

No. 05–04–00441–CV.

Court of Appeals of Texas, Dallas.

April 18, 2005.

Rehearing Overruled May 23, 2005.

---

Melinda D. Blackwell, G. Walter McCool, Brusniak McCool & Blackwell, P.C., Dallas, for Appellants.

George S. Henry, Law Office of George S. Henry, Dallas, for Appellee.

Before Justices MORRIS, WHITTINGTON, and FRANCIS.

## OPINION

Opinion by Justice WHITTINGTON.

After a bench trial, the trial judge entered judgment for Texas Land Finance Company II for taxes due on property purchased by Ronald A. Weisfeld, Slawomir Leszinski, Arturo Singer, and Blankenship # 1 F.L.P. In three issues, appellants allege the trial judge erred in dismissing their counterclaim for usury and awarding attorneys' fees and interest in the judgment. We affirm the trial court's judgment.

### BACKGROUND

Teleamerica Spanish Network, L.L.C. owned property at 2090 San Jacinto in Dallas. In October, 2001, and January, 2002, Texas Land Finance paid the taxes due on the property for the years 2000 and 2001, and the County of Dallas Tax Office transferred the tax liens on the property to Texas Land Finance. *See* TEX. TAX CODE ANN. § 32.06 (Vernon 2001) (taxing unit's tax lien may be transferred to person authorized to pay taxes on another person's real property). On January 22, 2002, Teleamerica as maker signed a real estate lien note in the amount of $38,825.91 to Texas Land Finance as payee. The note reflected the funds advanced by Texas Land Finance to pay the taxes due on the property. Texas Land Finance later brought suit against Teleamerica for the amounts due on the note. In March, 2003, appellants purchased the property at a foreclosure sale, and Texas Land Finance joined appellants as defendants in the suit.

Appellants answered and filed a counterclaim for usury. They also tendered the last amount allegedly demanded by Texas Land Finance, $53,220.33, into the registry of the court. Texas Land Finance filed a plea in abatement alleging appellants did not have standing to assert their usury claim. The trial judge granted the plea. After a bench trial, the trial judge awarded Texas Land Finance $49,996.34 as the amount owing on the transferred liens, plus interest and attorneys' fees. Appellants allege the trial judge erred in granting the plea in abatement and awarding Texas Land Finance attorneys' fees and interest.

### STANDARD OF REVIEW

In a bench trial, the trial judge, as fact finder, is the sole judge of the credibility of the witnesses. *Nelson v. Najm,* 127 S.W.3d 170, 174 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). The judge may take into consideration all the facts and surrounding circumstances in connection with the testimony of each wit-

ness and accept or reject all or any part of that testimony. *Nelson,* 127 S.W.3d at 174. The trial judge did not file findings of fact and conclusions of law. We therefore imply the trial judge made all the necessary findings to support its judgment, and we may uphold the judgment on any legal theory supported by the pleadings and evidence. *See Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83–84 (Tex.1992) (in nonjury trial, where no findings of fact or conclusions of law filed or requested, it will be implied that trial judge made all necessary findings to support judgment); *Nelson,* 127 S.W.3d at 174 (when trial judge does not enter findings of fact and conclusions of law after a bench trial, appellate court may uphold judgment on any legal theory supported by pleadings and evidence).

PLEA IN ABATEMENT AND COUNTERCLAIM

In their first issue, appellants contend the trial judge erred in granting Texas Land Finance's plea in abatement and dismissing appellants' counterclaim for usury. Appellants contend they have standing to assert their usury claim under section 32.065(e) of the Texas Tax Code even though they are not "obligors" under the applicable usury statutes. *See* TEX. TAX CODE ANN. § 32.065(e) (Vernon 2001) (providing for penalty if excessive interest is charged in contract for foreclosure of tax lien). Texas Land Finance argues appellants are not "obligors" who can recover for usury under the applicable statutory provisions. *See* TEX. FIN.CODE ANN. § 349.001 (Vernon Supp.2004–05) ("Liability for Contracting For, Charging, or Receiving Excessive Amount"). We conclude the trial judge did not err in granting Texas Land Finance's plea in abatement.

Appellants concede that where a statute imposes a usury penalty and establishes the lender's liability for the penalty "to the obligor," only the obligor has standing to assert a usury claim. *See Houston Sash & Door Co., Inc. v. Heaner,* 577 S.W.2d 217, 222 (Tex.1979) (statutory language "to the obligor" evidences legislature's intent that usury defense remain personal to debtor; statutes of penal nature to be strictly construed, so penalty forfeitures provided in statute restricted to immediate parties to transaction creating usury defense). Appellants argue, however, that their claim for usury arises under section 32.065(e), which provides:

> If in a contract under this section a person contracts for, charges, or receives a rate or amount of interest that exceeds the rate or amount allowed by this section, the amount of the penalty for which the person is obligated is determined in the manner provided by Chapter 349, Finance Code.

TEX. TAX CODE ANN. § 32.065(e) (Vernon 2001).

Citing *Quick v. City of Austin,* 7 S.W.3d 109 (Tex.1998), appellants contend that in section 32.065(e), the legislature intended to make usury remedies available to parties who are not obligors because there is no language restricting the remedy to the obligor. In *Quick,* the petitioners claimed a City of Austin water pollution control ordinance was void because it was not approved in advance by the Texas Natural Resource Conservation Commission. *Quick,* 7 S.W.3d at 112. The judge disagreed, pointing to numerous statutes in which the legislature had expressly required prior commission approval before a local ordinance became effective. *See Quick,* 7 S.W.3d at 122–23. The statute at issue in *Quick* had no similar language. The judge reasoned: "We presume that this omission has a purpose. The only purpose that we can ascribe for such an omission is that the Legislature did not intend that water pollution programs such

as the Ordinance require Commission approval before becoming effective." *Quick,* 7 S.W.3d at 122–23 (citation omitted).

Unlike the statute in *Quick,* however, section 32.065(e) cross-references a statute that does limit the lender's liability to an obligor. Section 32.065(e) cross-references Chapter 349 of the Finance Code to determine the amount of the penalty. Section 349.001 of the Finance Code provides that a person who contracts for, charges, or receives interest greater than the amount permitted by statute "is liable to the obligor" for certain penalties. *See* Tex. Fin. Code Ann. §§ 349.001(a) & (b) (Vernon Supp.2004–05). The legislature's cross-reference to a statute expressly including the limiting language does not evidence an intent to create a new, broader rule not limited to obligors. We overrule appellants' first issue.

### ATTORNEYS' FEES

In their second issue, appellants contend the trial judge erred in awarding attorneys' fees to Texas Land Finance. The judgment awards attorneys' fees as follows:

| | |
|---|---|
| Attorney's Fees: | $2,922.37 |
| Additional Attorney's Fees: (due only on foreclosure sale) | $3,051.38 |

The evidence showed taxes for two different years, 2000 and 2001, were at issue. The first award of attorneys' fees in the judgment is for the tax year 2001; the second award is for the tax year 2000. Appellants' complaint about these awards is twofold: first, the total amount of attorneys' fees awarded exceeds the applicable statutory limit, and second, the smaller award also should have been contingent on the completion of a foreclosure sale.

■ Because of its contract with Telemerica and the taxing authority's transfer of liens, Texas Land Finance could "exercise any right or remedy possessed by the transferring taxing unit." *See* Tex. Tax Code Ann. § 32.065(c) (Vernon 2001). Texas Land Finance relies on two statutory provisions to support the award of attorneys' fees in the judgment. First, Texas Land Finance contends for the year 2001 it could recover attorneys' fees of 15 percent under section 33.48 of the tax code. *See* Tex. Tax Code Ann. § 33.48(a)(5) (Vernon 2001) (in suit to collect delinquent tax, taxing unit entitled to recover attorneys' fees of 15 percent of total amount of taxes, penalties, and interest due). Second, Texas Land Finance contends for the year 2000 it could recover attorneys' fees of 10 percent under section 32.06(h), contingent upon foreclosure. *See* Tex. Tax Code Ann. § 32.06(h) (Vernon 2001) (if lienholder files suit to foreclose lien, and suit results in foreclosure, lienholder may recover attorneys' fees in an amount not to exceed 10 percent of judgment). Texas Land Finance argues the judgment correctly treats the two tax years at issue differently because the taxes for 2000 were delinquent while the taxes for 2001 were not.

Appellants counter that section 33.07(c) of the tax code prohibits any recovery of attorneys' fees. Section 33.07(c) provides: "If a penalty is imposed pursuant to this section, a taxing unit may not recover attorneys' fees in a suit to collect delinquent taxes subject to the penalty." *See* Tex. Tax Code Ann. § 33.07(c) (Vernon 2001). A penalty is imposed "pursuant to this section," however, only where taxes become, and remain, delinquent. *See* Tex. Tax Code Ann. § 33.07(a) (taxing unit may provide for additional penalty to defray costs of collection of taxes becoming delinquent on or after specific dates in tax year). Texas Land Finance argues section 33.07(c) does not apply to the taxes for 2001, because the 2001 taxes were paid before any penalties, interest, or fees were

imposed. We agree. Texas Land Finance was not prohibited by section 33.07(c) from recovering attorneys' fees of 15 percent for the year 2001, and the trial judge did not err in including this award in the judgment. *See* TEX. TAX CODE ANN. § 33.48.

For the year 2000, the taxes were delinquent, and the lien transferred from the taxing authority to Texas Land Finance included amounts for penalties and interest. Texas Land Finance does not argue it is entitled to recover the 15 percent measure of section 33.48 for the year 2000. Instead, Texas Land Finance contends it could recover attorneys' fees for the year 2000 under section 32.06(h), in the event of foreclosure of the lien. As noted above, under section 32.06(h), a holder of a lien may file suit to foreclose the lien, and, "[i]f the suit results in foreclosure of the lien, the person filing suit is entitled to recover attorneys' fees in an amount not to exceed 10 percent of the judgment." TEX. TAX CODE ANN. § 32.06(h). The trial judge found Texas Land Finance could recover attorneys' fees for 2000 under this provision only upon foreclosure. Therefore, the judgment reflects that the award of attorneys' fees for the year 2000 is "due only on foreclosure sale."

Contrary to appellants' arguments, the awards of attorneys' fees in the judgment do not exceed the applicable statutory percentages, and because section 33.48 does not condition recovery of attorneys' fees upon foreclosure, it was not necessary for the judgment to make the award for the year 2001 contingent upon foreclosure. We overrule appellants' second issue.

### INTEREST

In their third issue, appellants contend the trial judge erred in awarding interest after the date appellants tendered the amount due on the note into the registry of the court. Appellants urge their tender stopped the accrual of interest, citing section 3.603(c) of the Texas Business and Commerce Code. *See* TEX. BUS. & COM.CODE ANN. § 3.603(c) (Vernon 2002) (tender of payment of amount due on instrument discharges obligation to pay interest after the date of tender). Texas Land Finance argues no valid tender was made.

Appellants deposited the sum of $53,220.33 into the registry of the court when they filed their answer and counterclaim for usury. While appellants alleged this sum was the amount demanded by Texas Land Finance on the two tax liens, they further alleged this amount included charges for excessive interest, and requested damages for the alleged usurious interest. "Tender is an *unconditional* offer by a debtor to pay a sum not less than the full amount due on a debt or obligation." *Bray v. The Cadle Co.*, 880 S.W.2d 813, 818 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (emphasis in original). The burden of proving a valid tender is on the party asserting it. *Bray*, 880 S.W.2d at 818. Appellants deposited the funds into the registry of the court and counterclaimed for usury. These actions were not an unconditional offer to pay the full amount due. *See Clanton v. Cmty. Fin. & Thrift Corp.*, 262 S.W.2d 252, 255 (Tex.Civ.App.-Eastland 1953, no writ) (filing of suit for damages for usury clearly terminated tender of amount due on note). We overrule appellants' third issue.

We affirm the trial court's judgment.