# IN THE SUPREME COURT OF TEXAS

No. 15-0142

RICHARD D. CRAWFORD, PETITIONER,

v.

XTO ENERGY, INC., RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

**Argued September 15, 2016**

JUSTICE LEHRMANN delivered the opinion of the Court.

In this case, in which an oil-and-gas lessor sued the lessee for failure to pay royalties, we consider whether Texas Rule of Civil Procedure 39 required joinder of the lessor's neighboring landowners as parties to the suit. The trial court concluded that the neighboring landowners were necessary parties and dismissed the case without prejudice when the plaintiff failed to join them. The court of appeals affirmed. We hold that the trial court abused its discretion in requiring joinder under Rule 39 and dismissing the case. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

## I. Background

Mary Ruth Crawford owned approximately 146 acres of land in Tarrant County, Texas. In 1964, she conveyed the surface estate of 8.235 of those acres in fee simple to Texas Electric

Service Company, which operates an electric-transmission line on the property. In the deed conveying that acreage, Mary Ruth expressly reserved the oil and gas under the tract (the Crawford tract), along with a conditional right of ingress and egress for exploration and development.[1] Twenty years later, in 1984, Mary Ruth conveyed the property immediately north and south of the Crawford tract without reserving the oil and gas under those parcels. Much of that property was subsequently subdivided into residential lots.

In 2007, Mary Ruth executed an oil-and-gas lease (Crawford lease) on the Crawford tract with XTO Energy, Inc.'s predecessor in interest. The lease included a provision for royalty payments on gas and casinghead gas produced from the leased premises. The lease also contained a pooling provision.

Mary Ruth died in November 2007, and her son Richard Crawford inherited her estate. In April 2009, Crawford executed and recorded a ratification of the Crawford lease. Shortly thereafter, XTO pooled the Crawford lease with hundreds of other leases, designating the Eden Southwest Unit. Forty-four of those pooled leases encompassed lands adjacent to the Crawford tract. Each lease covered a particularly described tract, as well as "all land owned or claimed by Lessor adjacent or contiguous to the land particularly described [in the lease], although not included within the boundaries of the leased premises."

XTO completed a well on the Eden Southwest Unit that began producing in 2010. Crawford executed a division order and returned it to XTO. However, XTO obtained a title

---

[1] The deed states: "Grantors reserve unto themselves, their heirs and assigns, the right to all oil and gas in and under the lands herein conveyed but expressly waive all rights of ingress and egress for the purpose of drilling for or producing oil and/or gas from the surface of the lands herein conveyed, provided that wells opened on other lands may be bottomed on these lands."

2

opinion concluding that the share of royalties attributable to the Crawford tract should be credited to the forty-four adjacent landowners rather than Crawford. Specifically, the opinion concluded that, pursuant to the common-law strip-and-gore doctrine, Mary Ruth's 1984 conveyance of the land immediately north and south of the Crawford tract effectively also conveyed the minerals under that tract, even though the deed does not describe it. The strip-and-gore doctrine generally provides:

> Where it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of land that has ceased to be of any benefit or importance to him, the presumption is that the grantor intended to include such strip in such conveyance; unless it clearly appears in the deed, by plain and specific language, that the grantor intended to reserve the strip.

*Cantley v. Gulf Prod. Co.*, 143 S.W.2d 912, 915 (Tex. 1940). The title opinion led XTO to take the position that the Crawford-tract minerals were included in the 1984 conveyance because the deed contained no language reserving them.

The record does not reflect whether XTO considered filing an interpleader action after receiving the title opinion to resolve any issues or potential disputes regarding entitlement to the Crawford-tract royalties.[2] The record also does not reflect any conduct or statements by any of the adjacent landowners indicating their position on ownership of the Crawford tract. In any event, after obtaining the title opinion, XTO began crediting the Crawford-tract royalties to the adjacent landowners and has never made any royalty payments to Crawford.

Crawford sued XTO for breach of contract, declaratory judgment, and related claims arising out of XTO's failure to make royalty payments, asserting that XTO's "acts and omissions

---

[2] "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." TEX. R. CIV. P. 43.

3

have resulted in a cloud on [Crawford's] title to the Property." XTO filed a motion to abate and compel joinder of the forty-four adjacent landowners, arguing that they "have or claim interests in the [Crawford tract] that would be affected by the relief Crawford seeks and are, therefore, needed for the just adjudication of Crawford's claims under Rule 39." The trial court granted the motion, ordering Crawford to join the adjacent landowners or risk dismissal. The trial court also denied Crawford's motion for reconsideration. Crawford did not join the landowners, leading XTO to file a motion to dismiss and a motion for sanctions. The trial court denied the latter but granted the former and dismissed the case without prejudice.

A divided court of appeals affirmed, holding that the trial court did not abuse its discretion in requiring joinder. 455 S.W.3d 245 (Tex. App.—Amarillo 2015). Noting that the adjacent landowners are being paid royalties on the Crawford tract, the court concluded that the owners "have a pecuniary interest in the outcome of this litigation" and could "file their own suit" following a judgment in Crawford's favor, subjecting XTO to the possibility of inconsistent obligations. *Id.* at 248–49.

## II. Discussion

### A. Waiver Issues

Before turning to the merits, we address XTO's contentions regarding Crawford's purported waiver of various issues and arguments. First, XTO argues that Crawford has waived his entire appeal because the appellate record contains no reporter's record of the hearings on XTO's joinder and dismissal motions, and that we must therefore presume evidence was presented at those hearings that supports the trial court's orders. *See Piotrowski v. Minns*, 873 S.W.2d 368, 370–71 (Tex. 1993) ("A litigant who fails to request that the reporter record pretrial proceedings

4

risks waiver of any complaint with respect to error occurring during those proceedings."). The court of appeals rejected this argument, as do we.

A reporter's record is necessary only for evidentiary hearings; "for nonevidentiary hearings, it is superfluous." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005). Further, we generally presume that pretrial hearings are nonevidentiary unless "the proceeding's nature, the trial court's order, the party's briefs, or other indications show that an evidentiary hearing took place in open court." *Id.* at 783. The clerk's record in this case contains the motions and responses relating to the joinder issue, and the parties submitted a considerable amount of evidence with those filings. In the order granting XTO's motion to compel joinder, the trial court stated that it had considered the motion, response, and reply, along with "the arguments of counsel at the hearing on the Motion, the documents on file with the Clerk of the Court, and the applicable law." Similarly, in its order dismissing the case, the trial court stated that it had considered the motion to dismiss, the response, applicable law, and "the relevant evidence and documents on file with the clerk of the court." Nothing in those orders indicates that the trial court took evidence at the pertinent hearings or relied on any such evidence in ruling on the motions.

XTO asserts in its briefing that "there was documentary evidence that was marked as an exhibit and admitted into evidence at a hearing." XTO does not describe that evidence or clarify the specific hearing at which it was admitted. In light of the volume of evidence filed with the clerk and the absence of any indication that the trial court relied on any evidence submitted at a hearing, XTO's summary assertion that a single, undescribed piece of evidence was admitted as an exhibit at an unidentified hearing does not overcome the presumption that the pertinent hearings

5

were nonevidentiary. Accordingly, we hold that Crawford brought forward an adequate appellate record.

XTO next argues that Crawford waived his appeal by failing to include a statement of issues in his brief on the merits in this Court, as Texas Rule of Appellate Procedure 55.2 requires. *Guitar Holding Co. v. Hudspeth Cty. Underground Water Conservation Dist. No. 1*, 263 S.W.3d 910, 918 (Tex. 2008) ("[I]ssues not presented in the petition for review and brief on the merits are waived."). However, Crawford included an issues statement in his petition for review in accordance with the rules, and so long as his brief does not "raise additional issues or points or change the substance of the issues or points presented in the petition," TEX. R. APP. P. 55.2(f), we decline to apply Rule 55.2 so strictly as to deny Crawford our consideration of the merits.

**B. Joinder Analysis**

We review a trial court's rulings on issues concerning joinder of parties for an abuse of discretion. *See Royal Petroleum Corp. v. Dennis*, 332 S.W.2d 313, 317 (Tex. 1960). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Texas Rule of Civil Procedure 39 provides the framework for determining when joinder of a party is mandatory and states in pertinent part:

> A person who is subject to service of process shall be joined as a party in the action if
>
> (1) in his absence complete relief cannot be accorded among those already parties, or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may

(i) as a practical matter impair or impede his ability to protect that interest or

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If he has not been so joined, the court shall order that he be made a party. . . .

TEX. R. CIV. P. 39(a) (formatting added).[3]

XTO argues that Rule 39(a)(2) mandates joinder of the adjacent landowners because (1) they have a claim to the Crawford-tract minerals as a matter of law by virtue of the strip-and-gore doctrine, (2) a judgment in Crawford's favor, which would require a determination that he owns the Crawford tract despite Mary Ruth's 1984 conveyance, would directly impact their interests, and (3) to the extent such a judgment would not bind the adjacent landowners, they could reasonably be expected to file their own claims against XTO, subjecting it to a substantial risk of multiple, inconsistent obligations. Crawford responds that (1) the adjacent landowners have never claimed an interest in the Crawford-tract minerals, (2) the adjacent landowners have no such interest because the strip-and-gore doctrine does not apply in this case, and (3) the court of appeals erred in holding XTO's unilateral, improper royalty payments to the adjacent landowners created such an interest.[4]

---

[3] One of Crawford's causes of action is brought under the Texas Declaratory Judgments Act, which states that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." TEX. CIV. PRAC. & REM. CODE § 37.006(a). The Act uses different language than Rule 39 in describing who constitutes a necessary party and outlines different consequences for nonjoinder. While the Act simply clarifies that a "declaration does not prejudice the rights of a person not a party to the proceeding," *id.*, Rule 39 states that "the court shall order that [the necessary party] be made a party," TEX. R. CIV. P. 39(a). Accordingly, Rule 39's requirements govern when a party is seeking to compel joinder of persons in a declaratory-judgment action. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004).

[4] Crawford also argues that Rule 39(a)(1) does not require joinder because Crawford and XTO are the only parties to the lease underlying XTO's royalty obligations to Crawford, and thus complete relief may be accorded among those already parties. *See* TEX. R. CIV. P. 39(a)(1) (requiring joinder of a person if "in his absence complete

As an initial matter, we reject Crawford's contention that the strip-and-gore doctrine's purported inapplicability to Mary Ruth's 1984 conveyance forecloses the adjacent landowners' necessary-party status. The crux of the argument is that, because Crawford should and will prevail on the merits of his claims, the adjacent landowners necessarily have no interest in the Crawford tract or this litigation. But this reasoning improperly hinges the necessary-party inquiry on the result of the merits inquiry. The court of appeals correctly recognized that the question of whether the adjacent landowners are necessary parties must be resolved before, not after, the merits of Crawford's claims. 455 S.W.3d at 249. The ultimate issue of the strip-and-gore doctrine's effect on the Crawford tract is an interesting one, but it is not before us and has no bearing on our Rule 39 analysis.

Nevertheless, we agree with Crawford that the adjacent landowners are not necessary parties under Rule 39(a)(2) because they do not "claim[] an interest relating to the subject of the action." TEX. R. CIV. P. 39(a)(2). The verb "claim" means "to demand recognition of (as a title, distinction, possession, or power) esp. as a right"; "to demand delivery or possession of by or as if by right"; "to assert or establish a right or privilege." *Claim*, WEBSTER'S THIRD NEW INT'L DICTIONARY (2002); *see also Claim*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2016) (defining claim in pertinent part as "[t]o demand, ask for, or take as one's own or one's due"; "[t]o state to be true, especially when open to question; assert or maintain"). As discussed below, despite XTO's contention that the forty-four adjacent landowners claim an interest relating to the subject of this suit by virtue of their alleged ownership interest in

---

relief cannot be accorded among those already parties"). We agree and note that XTO does not contest the merits of that argument. Instead, XTO contends that Crawford waived the argument on appeal by failing to challenge an implied finding that the adjacent landowners are necessary parties under Rule 39(a)(1). We disagree. Crawford substantively argued in both the court of appeals and this Court that Rule 39(a)(1) does not require joinder.

8

the Crawford-tract minerals,[5] no record evidence shows or even suggests that a single one of the adjacent landowners has ever demanded or asserted ownership of or a royalty interest in those minerals.

It is undisputed that the 1984 deed by which Mary Ruth Crawford conveyed the property immediately north and south of the Crawford tract does not describe any portion of that tract. Nor does XTO assert that any portion of the Crawford tract is described in the downstream deeds ultimately conveying the subdivided lots to the adjacent landowners.[6] XTO points out that the adjacent landowners' oil-and-gas leases cover not only the properties specifically described therein—the descriptions presumably match those in the owners' respective deeds—but also "all land owned or claimed by Lessor adjacent or contiguous to the land particularly described." However, that language does not reflect an interest in any specific property; it merely ensures that any such interest, to the extent it exists, is covered by the lease. Accordingly, the landowners do not claim an interest in the Crawford-tract minerals solely by virtue of their deeds and leases.

This is in stark contrast to cases involving oil-and-gas leases and title disputes in which joinder of nonparty lessors was required. *See, e.g.*, *Veal v. Thomason*, 159 S.W.2d 472, 477 (Tex. 1942) (holding that all landowners who executed leases on a unitized block were necessary parties in a suit to cancel one of the leases); *Kodiak Res., Inc. v. Smith*, 361 S.W.3d 246, 251–52 (Tex. App.—Beaumont 2012, no pet.) (holding that all lessors under a single mineral lease were

---

[5] The pooled leases granted XTO a fee simple determinable interest in the minerals that make up the Eden Southwest Unit, including the Crawford-tract minerals, with the lessors retaining only royalty interests. XTO therefore owns the minerals, subject to a possibility of reverter in the lessors. *See Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003). XTO contends that the adjacent landowners, not Crawford, own the royalty interest and possibility of reverter with respect to the Crawford-tract minerals.

[6] Most of those deeds are not in the record.

9

necessary parties to a suit filed by some of the lessors against the operator lessees for a declaratory judgment that the lease had terminated); *Longoria v. Exxon Mobil Corp.*, 255 S.W.3d 174, 182 (Tex. App.—San Antonio 2008, pet. denied) (holding that, where the plaintiffs sued energy companies seeking to establish title to an undivided one-half interest in a partially leased mineral estate, the trial court did not abuse its discretion in ordering joinder of "the record owners of 100% of the royalty interests and the possibility of reverter of the mineral estate"). In all of these cases, the absent parties expressly claimed an interest in the subject of the litigation through their deeds and leases. Here, the adjacent landowners' deeds and leases by themselves reflect no interest in the Crawford-tract minerals.

XTO insists that the pertinent deeds' failure to specifically describe the Crawford tract is irrelevant because, if the strip-and-gore doctrine applies, a presumption arises that the tract was nevertheless conveyed. *See Stribling v. Millican DPC Partners, LP*, 458 S.W.3d 17, 21 n.4 (Tex. 2015) (noting that "under certain circumstances [the strip-and-gore doctrine] allows for a presumption that a relatively small and narrow strip of land omitted from the deed is still conveyed"). We do not disagree that the adjacent landowners *could* claim that, under the circumstances, the strip-and-gore doctrine gives them an interest in the Crawford-tract minerals. But only XTO has actually claimed that the adjacent landowners have such an interest; the landowners themselves have not, either directly or indirectly. That said, the court of appeals correctly noted that the landowners did not need to actually "c[o]me to court to assert an interest" in order to claim an interest under Rule 39. 455 S.W.3d at 248–49. But they needed to do *something*, and the adjacent landowners have done nothing.

10

The court of appeals found significant the undisputed fact that the adjacent landowners are being paid royalties attributable to the Crawford tract and thus "have a pecuniary interest in the outcome of this litigation." *Id.* at 249. But the record reflects that XTO unilaterally made the determination to credit the Crawford-tract royalties to the adjacent landowners. Indeed, nothing in the record indicates whether the adjacent landowners are even aware that a portion of the royalties XTO has been sending them is attributable to the Crawford tract, much less that they have "demanded" or "asserted" a right to that portion. We decline to hold that the adjacent landowners have claimed an interest in the Crawford-tract minerals merely because XTO has been sending them royalties to which they never claimed entitlement. In sum, Rule 39 does not require joinder of persons who potentially could claim an interest in the subject of the action; it requires joinder, in certain circumstances, of persons who actually claim such an interest.

XTO reasonably expresses concern that a judgment in Crawford's favor in the absence of the adjacent landowners would subject XTO to the risk of incurring multiple or otherwise inconsistent obligations. TEX. R. CIV. P. 39(a)(2). Noting that a judgment for Crawford would diminish the adjacent landowners' future royalties, XTO claims "it can be reasonably expected and anticipated" that the landowners will sue XTO and assert a right to royalties attributable to the Crawford tract. While this concern is logical, it does not alter our conclusion.

Again, Rule 39 requires joinder of a person who "claims an interest relating to the subject of the action" and whose absence subjects a party to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations *by reason of* [the absent person's] claimed interest." *Id.* (emphasis added). XTO's risk of incurring inconsistent obligations has arisen not "by reason of" the adjacent landowners' "claimed interest" in the Crawford-tract minerals—they have claimed

11

no such interest—but because XTO might reduce their royalty payments after unilaterally determining that they should encompass the Crawford tract. That determination does not make the adjacent landowners necessary parties under Rule 39(a).[7]

Notably, the rules do not leave XTO powerless to alleviate its risk of being subjected to inconsistent obligations. To that end, Rule 37 states: "Before a case is called for trial, additional parties necessary *or proper* parties to the suit, may be brought in, either by the plaintiff or the defendant, upon such terms as the court may prescribe; but not at a time nor in a manner to unreasonably delay the trial of the case." TEX. R. CIV. P. 37 (emphasis added). We see no impediment to XTO's utilizing Rule 37 to bring in the adjacent landowners itself in order to avoid the risk of future lawsuits and inconsistent judgments. But it may not force Crawford to add the adjacent landowners or face dismissal of his claims under Rule 39.[8]

### III. Conclusion

Rule 39(a) requires joinder of certain persons who "claim[] an interest relating to the subject of the action." The adjacent landowners do not claim an interest relating to the Crawford-tract minerals that are the subject of Crawford's suit against XTO. Accordingly, the trial court abused its discretion in holding that the adjacent landowners are necessary parties under Rule 39

---

[7] We note that Rule 39(b) is triggered when a person required to be joined under Rule 39(a) "cannot be made a party." TEX. R. CIV. P. 39(b). In that instance, the court "shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." *Id.* The parties did not debate Rule 39(b)'s applicability in the trial court or the court of appeals, and XTO argues that Crawford did not preserve the argument that dismissal was inappropriate under that rule. Our disposition of the case under Rule 39(a) renders it unnecessary to reach the parties' Rule 39(b) arguments.

[8] XTO makes an additional waiver argument, contending that Crawford has failed to challenge all implied findings of fact favoring the trial court's judgment and all grounds upon which the judgment could have been based. Because our ultimate holding—that the adjacent landowners are not necessary parties under Rule 39—is based on the conclusion that the landowners have not claimed an interest in the subject of the action, and because Crawford has consistently challenged the trial court's judgment on that basis, we reject XTO's waiver arguments.

12

and in dismissing Crawford's suit for his failure to join them.  We reverse the court of appeals'

judgment and remand the case to the trial court for further proceedings consistent with this opinion.


_____
Debra H. Lehrmann
Justice


**OPINION DELIVERED:** February 3, 2017